UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRICIA MAYNARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION FILE NO. |
| v. | ) _____ |
| | ) |
| SAVASENIORCARE | ) |
| ADMINISTRATIVE AND | ) JURY TRIAL DEMANDED |
| CONSULTING, LLC, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Tricia Maynard ("Plaintiff" or "Maynard") hereby files this Complaint against SavaSeniorCare Administrative and Consulting, LLC ("Defendant" or "Sava") pursuant to the anti-retaliation provisions of the False Claims Act, 37 U.S.C. § 3731, *et seq.* ("FCA") and the Georgia Medicaid False Claims Act, O.C.G.A. § 49-4-168, *et seq.* ("GFMCA"), the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Section 1981 of the Civil Rights Act of 1964, 42 U.S.C. § 1981 ("Sec. 1981").[1] In the latter months of her employment at Briarwood Health and Rehabilitation Center ("Briarwood" or the "facility"), a facility owned and operated by Defendant, Plaintiff raised multiple complaints about

---

[1] Plaintiff files this only under the anti-retaliation provisions of the False Claims Act and not as a *qui tam* action.

the conditions and standard of care there. Defendant's failings in this regard caused it to be out of compliance with numerous of the state and federal regulations imposed on healthcare providers. Defendant terminated Plaintiff for reporting these violations and is thus liable to her under 31 U.S.C. 3730 (h) and O.C.G.A. § 49-4-168.4 for damages and other relief. Plaintiff was also the facility's only white employee, and the treatment that she received during this time also gives rise to claims for racial discrimination under Section 1981. Finally, throughout her employment, Defendant regularly failed to compensate Plaintiff for the overtime hours that she worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

## JURISDITION AND VENUE

**1.**

This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732 (a), 28 U.S.C. § 1331, and 38 U.S.C. § 1367.

**2.**

This Court has personal jurisdiction over Defendant.

**3.**

Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c). Defendant resides in this district and all of the acts giving rise to Plaintiff's claims occurred in the district.

4.

Plaintiff is entitled to and demands a trial by jury.

## PARTIES

5.

Plaintiff is a resident of Georgia and a United States citizen. She was employed by Defendant as the Activities Coordinator at its Briarwood facility from 2012 until her termination in September 2020.

6.

Defendant is a domestic corporation that operates a number of facilities in several states across the US which provide long term nursing services, primarily to the elderly and memory impaired. Briarwood Health and Rehabilitation Center is one such facility.

7.

Defendant may be served at 8601 Dunwoody Place, Suite 775, Sandy Springs, GA, 30350, USA.

## GOVERNING REGULATIONS AND BACKGROUND

8.

Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*., establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of the United States Department of Health and

Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS"), a component of HHS.

9.

The Medicare program consists of several parts. Medicare Part A provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. § 1395c-1395i-2. Medicare Part B is a federally subsidized, voluntary insurance program that covers certain non-hospital medical services and products including the treatments at issue in this complaint. 42 U.S.C. § 1395(k), 1395(i), 1395(s). Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the carriers act on behalf of CMS. 42 C.F.R. § 421.5(b).

10.

In order to receive Medicare funds, enrolled suppliers, including Defendant, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

11.

Among the rules and regulations which enrolled suppliers, including Defendant, agree to follow are to: (1) bill Medicare Carriers for only those covered

services which are medically necessary; (2) not bill Medicare Carriers for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (3) not engage in any act or omission that constitutes or results in over-utilization of services; (4) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (5) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (6) not engage in any illegal activities related to the furnishing of services to recipients.

**12.**

Medicaid is a joint federal/state program that provides care for indigent and disabled people. Although the Medicaid program is administered by the states, it is funded in a significant part by the federal government.

**13.**

At all times relevant to this Complaint, Defendant was a participating Medicare and Medicaid provider. Defendant submitted claims for payment to Medicare and Medicaid for services and supplies.

**14.**

Upon information and belief, at all times relevant to this Complaint, monies from Medicare and Medicaid constituted a significant source of revenue for Defendant.

**15.**

All of the conduct alleged in this Complaint is alleged to have occurred "knowingly" or with reckless disregard, as those terms are defined in the False Claims Act, 31 U.S.C. § 3729 and related case law.

**16.**

In doing the acts and things described in this Complaint, managerial employees of the Defendant acted within the course and scope of their respective agencies and/or employment with the Defendant, and each of them, with the knowledge and consent of the Defendant, and each of them.

## STATEMENT OF FACTS

### Mrs. Maynard's Employment with Defendant

**17.**

Defendant hired Plaintiff to work at Briarwood as its Activities Director in 2012.

**18.**

During her employment with Defendant, Plaintiff worked from approximately 6:30 AM to 3:30 PM every weekday, including Monday holidays.

**19.**

Plaintiff was also periodically required to work Saturday mornings.

**20.**

Defendant never paid Plaintiff overtime for the hours over 40 that she worked each week.

**21.**

In 2019, Defendant hired Baren Akers as Briarwood's new Executive Director.

**22.**

Soon after Akers' assumption of this role, Plaintiff began to observe that the facility's administration become more cavalier in its treatment of patients, and the quality of care began to decline.

**23.**

On April 6, 2020, Maynard found that she had been exposed to a resident who had recently tested positive for COVID-19.  Immediately after this discovery, she sought out Akers to inform him that she would be going home until she could be tested.  He responded by threatening her, saying, "If you walk out that door, you

may not be coming back," and asking, "What happens when the next virus comes around?" Despite her serious reservations that she may lose her job, she left to quarantine. Plaintiff's doctor advised her that she should remain out of work for the required 14 days.

24.

Plaintiff reached out to Lisa Dokes of Defendant's corporate HR office about the above conversation with Baren, but she never replied.

25.

Upon her return, she discovered that all other employees who had been exposed to the virus had returned after just a few days and that the majority were not wearing masks.

26.

Plaintiff was the only employee subject to heightened requirements for returning to work and the only employee made to use paid vacation time during this absence. As a result, Plaintiff lost two days of pay.

27.

She was also the only white employee working at the facility at the time. Plaintiff complained about this loss of pay to Akers and others, but to no avail.

28.

Marcia Robinson, the facility's CNA scheduling coordinator referred to Plaintiff as "white lady" when she encountered her.

29.

On one occasion, Plaintiff requested that a black CNA who was working on the floor of the nursing home put on a mask. The CNA refused, but Plaintiff persisted, stating that it was dangerous for the patients for her not to wear one. The next day, Plaintiff asked her again to wear a mask. This time, the CNA screamed at her and marched towards her threateningly with her hand pulled back as if to hit her. She repeated this same behavior once more not long after, again marching menacingly towards Plaintiff. Plaintiff reported these incidents to management.

30.

Soon after, Baren Akers told Ms. Robinson to inform a nurse that the offending CNA was suspended until further notice. Instead, Ms. Robinson stated to nurse, "Don't do it, don't do it! She's one of us," meaning that she was a black employee. The CNA was not terminated or even suspended.

**Mrs. Maynard Raises Protected Complaints**

31.

Following Akers' assumption of the role of Executive Director, Plaintiff filed at least eleven "concern forms" to him. These are forms supplied by Defendant for

the express purpose of allowing its employees to identify issues with legal noncompliance, employee behavior, and other issues having to do with quality of care and safety at the facility. Each of these concern forms were read aloud each morning before the facility's administrative team, including Akers.

**32.**

On March 11, 2020, Plaintiff filed a concern form on behalf of a Briarwood resident who had been verbally abused by a nurse at the facility. In speaking of this incident, she stated that she was scared for her life.

**33.**

On June 3, 2020, Plaintiff filed a concern form on behalf of a resident relating to an incident where the resident was concerned that her nurse was giving her the wrong medications. The nurse then refused to allow her to see into the medicine cup to confirm that the medications were correct. When the nurse looked away, however, she did look, and saw that the medications were incorrect.

**34.**

On June 3, 2020, Plaintiff filed another concern form on behalf of a resident whose catheter had not been cleaned in weeks. When Plaintiff checked this patient's charts, she discovered that someone had falsified the patient's paperwork to show that the catheter had been cleaned recently. Plaintiff also stated that this patient's 'HELP' button had not been functional for months, and despite her repeated

requests, no one had fixed it, leaving her without one should she have needed emergency assistance.

35.

On June 28, Plaintiff filed a concern form on behalf of a patient whose CNA told her at mealtime that if she could not eat faster, she would not be fed. The same CNA also told her, "If you have diarrhea again, you are going to sit in it, because I am not changing you again." This patient was in tears as she relayed this information to Maynard.[2]

36.

Due to her years of experience in the assisted living/ rehabilitation industry and numerous voluntary and legally mandated training sessions, Plaintiff knew that these violations were not only unethical, but also illegal, and that the facility was at risk of losing its Medicare and Medicaid funding if they were to come to light.

**Defendant Retaliates against Plaintiff for Raising Complaints**

37.

On or about September 8, 2020, Akers called Plaintiff into his office and berated her, stating that he was "in big trouble" with his superiors because of the concern forms that she had submitted. He stated, "You are going to bury yourself,"

---

[2] The complaint forms described above comprise only a fraction of the forms that Plaintiff filed, and only a smaller fraction of the complaints she made generally.

and that from then on, "[he] would decide when a concern went on a written document."

**38.**

Just over three weeks later, Defendant terminated Plaintiff's employment.

# COUNT I
# RETALITION IN VIOLATION OF
# THE FALSE CLAIMS ACT

**39.**

Plaintiff incorporates by reference paragraphs 1-38 as if fully set forth herein.

**40.**

In order for an employee to have engaged in protected activity under the FCA, all he must show is that he was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

**41.**

In order to satisfy the Act's state of mind requirement, employees only need show that the employer's "suspected misdeeds are a violation of the False Claims Act." Hickman v. Spirit of Athens, Ala., Inc., 985 F.3d 1284, 1289, (11th Cir. 2021) (emphasis omitted).

42.

Defendant is properly considered an employer under the FCA.

43.

Defendant engaged in activity prohibited by the FCA under 31 U.S.C § 3729 (a) (1).

44.

Defendant knowingly caused to be made false claims for payment to the United States Government in violation of 31 U.S.C. § 3729 (a) (1).

45.

Plaintiff reasonably believed that Defendant's malfeasance could have caused it to lose its Medicare and Medicaid funding and that its receipt of these funds was thus fraudulent.

46.

Defendant engaged in prohibited retaliatory action when it reprimanded Plaintiff on September 8 for raising concerns about Defendant's compliance issues and when it discharged Plaintiff for having complained of the fraudulent actions that it committed against the United States Government. *See* 31 U.S.C. § 3730 (h) (1).

47.

Having been subject to unlawful retaliation as described above, Plaintiff is entitled to all necessary relief to make her whole and all other damages permitted by law, including reasonable attorney's fees and costs.  *See* 31 U.S.C. § 3730 (h) (2).

## COUNT II
## RETALIATION IN VIOLATION OF THE
## GEORGIA FALSE MEDICAID CLAIMS ACT

48.

Plaintiff incorporates by reference paragraphs 1-38 as if fully set forth herein.

49.

In order for an employee to have engaged in protected activity under the GFMCA, all he must show is that he was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by such employee, contractor, agent or associated others in furtherance of a civil action under this Code section or other efforts to stop one or more violations of this article." O.C.G.A § 49-4-168.4 (a).

50.

Defendant is properly considered an employer under the GFMCA.

**51.**

Defendant engaged in activity prohibited by the GMFMCA under O.C.G.A. § 49-4-168.1

**52.**

Defendant knowingly caused to be made false claims for payment to the United States Government in violation of O.C.G.A. § 49-4-168.1.

**53.**

Plaintiff reasonably believed that Defendant's malfeasance could have caused it to lose its Medicaid funding and that its receipt of these funds was thus fraudulent.

**54.**

Defendant engaged in prohibited retaliatory action when it reprimanded Plaintiff on September 8 for raising concerns about Defendant's compliance issues and when it discharged Plaintiff for having complained of the fraudulent actions that it committed against the United States Government and the State of Georgia. *See* O.C.G.A. § 49-4-168.4.

**55.**

Having been subject to unlawful retaliation as described above, Plaintiff is entitled to all necessary relief to make her whole and all other damages permitted by law, including reasonable attorney's fees and costs. *See* O.C.G.A. § 49-4-168.4.

## COUNT III
## FAILURE TO PAY OVERTIME IN VIOLAITON
## OF THE FAIR LABOR STANDARDS ACT

56.

Plaintiff incorporates paragraphs 1-38 by reference as if fully set forth herein.

57.

The FLSA requires that employers compensate their employees at a rate of one and a half times their regular rate of pay for each hour in excess of 40 that they work each week.  29 U.S.C. § 207(a)(1).

58.

Defendant is an employer within the meaning of the FLSA.

59.

Plaintiff is an employee within the meaning of the FLSA.

60.

Plaintiff worked many overtime hours since May 10, 2018 for which she was not compensated at the proper rate by Defendant.

61.

Plaintiff is thus entitled to back pay for unpaid overtime, liquidated damages, attorney's fees, and costs pursuant to 29 U.S.C. § 216(b).

## COUNT IV
## DISCRIMINATION IN VIOLATION OF SEC. 1981
## OF THE CIVIL RIGHTS ACT OF 1964

**62.**

Plaintiff incorporates paragraphs 1-38 by reference as if fully set forth herein.

**63.**

42 U.S.C. § 1981 prohibits employers from discriminating against employees in the terms and conditions of their employment because of their race.

**64.**

Race discrimination claims may be proved by demonstrating that the employer treated an employee differently "than similarly situated employees outside of [the employee's] protected class." *Baker v. Bank of Nova Scotia*, No. 1:04-CV-660-RLV, 2006 U.S. Dist. LEXIS 12996, at *21 (N.D. Ga. Jan. 31, 2006).

**65.**

Defendant discriminated against Plaintiff by not permitting her to return to work following her exposure to COVID-19 under the same terms and conditions of her co-workers, who were black, and was the only employee made to use paid time off during her COVID-19 related absence.

**66.**

Defendant discriminated against Plaintiff by pretextually terminating her for not reporting a bogus sexual abuse accusation and not even disciplining the other black employees who had the same knowledge of the incident.

**67.**

Plaintiff is entitled to all damages permitted by law, including but not limited to, compensatory and punitive damages, back pay, front pay, and attorney fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests judgment in its favor on each count in this Complaint and demands:

(a)   That judgment be awarded for and in favor of Plaintiff Tricia Maynard, and against Defendant SavaSeniorCare Administrative and Consulting, LLC, on Count I for all relief allowable under the False Claims Act, 31 U.S.C. § 3721, *et seq.*;

(b)   That judgment be awarded for and in favor of Plaintiff Tricia Maynard, and against Defendant SavaSeniorCare Administrative and Consulting, LLC, on Count II for all relief allowable under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

(c)   That judgment be awarded for and in favor of Plaintiff Tricia Maynard, and against Defendant SavaSeniorCare Administrative and Consulting, LLC, on Count III for all relief allowable under the Section 1981 of the Civil Rights Act of 1964, 42 U.S.C. § 1981

(d)   Any and all other relief as the Court deems just and proper.

This 12th day of May 2021.

                                                */s/ James M. McCabe*
                                                James M. McCabe
Georgia Bar No. 724618
Graham White
Georgia Bar No. 535538

The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724
jim@mccabe-lawfirm.com

Attorneys for Plaintiff